# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Erika Fulton,

          Plaintiff,

                      Case No. 1:23-cv-4655-MLB

v.

Fayette Community Hospital, Inc.
and Piedmont Healthcare, Inc.,

          Defendants.

_____/

## **OPINION & ORDER**

Plaintiff Erika Fulton, proceeding pro se, sued Defendants Fayette Community Hospital, Inc. and Piedmont Healthcare, Inc. for violations of the Emergency Medical Treatment and Labor Act ("EMTALA"). (Dkt. 19.) Defendants moved to dismiss. (Dkt. 30.) Plaintiff opposed and moved to strike. (Dkts. 32, 33.) Plaintiff also twice moved for leave to file a second amended complaint. (Dkts. 40, 51.) The Court denies

Plaintiff's motions for leave to amend and motion to strike and grants Defendants' motion to dismiss.

## I.    Motion to Dismiss

On June 23, 2022, Plaintiff was in a car accident. (Dkt. 19 ¶ 21.) An ambulance transported her to Piedmont Fayette Hospital's Emergency Department. (*Id.* ¶ 22.) She was on a stretcher and had a "basic C collar" for medical treatment. (*Id.*) She complained of neck, shoulder, and head pain and could not hold her head up. (*Id.* ¶ 23.) Hospital staff asked her about payment and insurance instead of immediately providing medical treatment. (*Id.* ¶ 24.)

Plaintiff alleges Dr. Nadria Lynn ordered an Xray. (*Id.* ¶ 28.) Hospital staff took the Xray about an hour after Plaintiff arrived at the hospital and gave her pain medication about an hour after that. (*Id.* ¶¶ 31, 33.) A couple of minutes later, a physician's assistant, Paul Oenick, met with Plaintiff. (*Id.* ¶¶ 34–35.) Plaintiff's parents warned Oenick that Plaintiff could not hold her head up and was in unbearable pain. (*Id.* ¶ 24.) Oenick examined Plaintiff, but she "whaled and begged" him to stop. (*Id.* ¶ 37.) Plaintiff says Oenick became frustrated with her and "chastised" her for being in pain, thus showing "clear bias." (*Id.*

¶ 38.)   Oenick ultimately gave Plaintiff a prescription for Flexeril (a muscle relaxer) and Motrin, telling her to "learn to tolerate some pain." (*Id.* ¶ 39.)   Oenick discharged Plaintiff "without any additional and necessary medical care when it was visibly obvious that [Plaintiff] was not stabilized." (*Id.* ¶ 40.)   Plaintiff says her parents wheeled her out of the examination room holding her head up as she "whaled loudly." (*Id.* ¶ 41.)

Plaintiff, proceeding pro se, sued Defendants Fayette Community Hospital, Inc. and its owner, Piedmont Healthcare, Inc., under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(a) and (b).   (*Id.*)   She contends Defendants violated EMTALA by failing to provide an appropriate medical screening and other necessary medical care.  (*Id.* at 7–11.)   She alleges she "suffered injury to her body" and other losses because of Defendants' actions.  (*Id.* ¶ 9.)  She seeks compensatory damages for deterioration of her medical condition, pain and suffering, and job loss.  (*Id.* at 12.)

On May 14, 2024, Plaintiff amended her complaint.  (Dkt. 19.)  The Court conducted a frivolity review, dismissed her medical stabilization claim under § 1395dd(b), and let her medical screening claim under

3

§ 1395dd(a) go forward.  (Dkt. 20.)  Defendants now move to dismiss that claim.  (Dkt. 30.)

### B.  Legal Standard

When reviewing a motion to dismiss, a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When a complaint fails "to state a claim upon which relief can be granted," it should be dismissed.  Fed. R. Civ. P. 12(b)(6).  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

## C.  Discussion

Defendants argue Plaintiff fails to state a claim under § 1395dd(a) because (1) she inappropriately attempts to bring a state medical malpractice claim under the guise of EMTALA and (2) she fails to allege plausibly that Piedmont Fayette treated her differently than other patients with similar complaints or symptoms.  (*Id.* at 7–21.)   In response, Plaintiff disputes Defendants' characterization of her claim as one sounding in medical malpractice and argues the hospital departed from its standard screening procedures in treating her.  (Dkt. 32.)

"EMTALA was enacted to prevent 'patient dumping,' the publicized practice of some hospitals turning away or transferring indigent patients without evaluation or treatment."  *Harry v. Marchant*, 291 F.3d 767, 768 (11th Cir. 2002).   Under EMTALA, when an individual presents for treatment at the emergency department of a hospital, the hospital must provide an appropriate medical screening to determine whether the person is suffering from an "emergency medical condition."  42 U.S.C. § 1395dd(a).   Although EMTALA does not define "appropriate medical screening," the Eleventh Circuit has stated that "this language only requires a hospital to provide indigent patients with a medical screening

similar to one which they would provide any other patient." *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994). Thus, "[a]s long as a hospital applies the same screening procedures to indigent patients which it applies to paying patients, the hospital does not violate" the statute. *Id.* "What constitutes an 'appropriate' screening is properly determined not by reference to particular outcomes, but instead by reference to a hospital's standard screening procedures, such that an appropriate screening occurs when a hospital conforms in its treatment of a particular patient to its standard screening procedures." *Arnold v. Emory Healthcare, Inc.*, 2022 WL 22865201 at *4 (N.D. Ga. July 25, 2022).

Importantly, EMTALA "was not intended to be a federal malpractice statute." *Harry*, 291 F.3d at 770. The Act does not "establish guidelines for patient care," *id.* at 773, and "is not designed to redress a negligent misdiagnosis by the hospital." *Holcomb*, 30 F.3d at 117. Thus, "when an exercise in medical judgment produces a given diagnosis, the decision to prescribe a treatment responding to the diagnosis cannot form the basis of an EMTALA claim of inappropriate screening." *Vickers v. Nash Gen. Hosp.*, Inc., 78 F.3d 139, 144 (4th Cir. 1996).

The Court agrees with Defendants that Plaintiff's claim is "nothing more than a conventional state medical malpractice claim" masquerading as an EMTALA screening claim. (Dkt. 30 at 12.) The essence of Plaintiff's amended complaint is that she should have received a different or more extensive medical screening examination at Piedmont Fayette. Specifically, Plaintiff contends she should have received an "MRI or PET scan in lieu of an Xray" (Dkt. 19 ¶ 44), should have seen a doctor sooner (*Id.* ¶ 34), and should have been examined by a medical doctor rather than by a physician's assistant (*Id.* ¶¶ 46–51). Those allegations simply challenge the medical judgment of Piedmont Fayette's medical professionals regarding the type and timing of the screening she received.

But—again—EMTALA does not provide a basis for challenging "an exercise in medical judgment," so long as that exercise conforms with the hospital's standard screening procedures and treatment of similarly situated, paying patients. *Vickers*, 78 F.3d at 144. Plaintiff fails to allege Defendants deviated from any standard hospital procedure in screening or treating her, which might (along with other allegations not included here) plausibly allege she suffered disparate treatment because she was

7

not a paying patient.[1]  More importantly, she fails to identify any other person with a similar condition who would have received a better or different screening exam.  The closest Plaintiff comes to alleging disparate treatment is her allegation she should have received an MRI or PET scan rather than an Xray, that Defendants "regularly offered those services to others," and that it did not provide them to her "because she was listed . . . [as] not a paying patient."  (Dkt. 19 ¶ 44.)  This allegation, however, is not enough.  She must allege Defendants offered

---

[1] In her response brief, Plaintiff argues Piedmont Fayette "depart[ed] from its standard screening procedures." (Dkt. 32 at 7–9.) She attaches a document she argues shows Piedmont Fayette's internal policy prohibited physician's assistants from performing a medical screening without a physician, meaning that her examination was in violation of the hospital's standard screening procedures. (*Id.*) The Court does not consider it for two reasons. First, she did not include the information in her complaint and cannot add to her allegations in a brief. *See Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009) ("[A]nalysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.") Second, the document appears to be a publication from the Association of Health Care Journalists relating to a December 11, 2010 incident involving another patient at Piedmont Fayette. While it references Piedmont Fayette's internal policies for medical screenings, the document is not properly authenticated and, in any event, is outdated (by more than a decade). So it does not plausibly present Defendants' internal procedures here. For this second reason, the document also does not support Plaintiff's motion to amend, discussed below.

MRI and PET scans to paying patients with the same symptoms she had. *See Vickers*, 78 F.3d at 144 ("Because appellant does not allege that Vickers received different treatment than other patients perceived to have the same medical condition, he fails to state a claim of inappropriate screening under EMTALA."); *Arnold*, 2022 WL 22865201 at *5 (plaintiff's "repeated conclusory statements that she would have been treated differently had she been white do not satisfy this element because she does not allege that any such patients—who are not identified with an adequate level of specificity—had similar symptoms or conditions"). Put simply, because Plaintiff does not allege "someone else with a similar condition or similar symptoms received a different screening, her claim fails." *Arnold*, 2022 WL 22865201 at *5.

The Court thus concludes Plaintiff fails to state a claim and **GRANTS** Defendants' motion to dismiss.

## II.    Motion to Strike

In her response to Defendants' motion to dismiss, Plaintiff argues Defendants' motion "is procedurally non-compliant and should result in default" because (1) it exceeds the "word count" of 5200 words and (2) was filed "instead of filing a proper Answer." (Dkt. 32 at 2.) Plaintiff raises

these same arguments, verbatim, in her Motion to Strike Defendants'
Motion to Dismiss. (Dkt. 33.) These arguments are meritless.

The Local Rules of this Court do not specify a word limit for
motions, but rather a page limit of twenty-five (25) pages. LR 7.1(D).
Defendants' motion is twenty-three (23) pages long. And Federal Rule of
Civil Procedure 15(a) does not require a defendant to file an answer in
response to an amended pleading. Instead, Rule 15(a)(3) gives a
defendant 14 days to make "any required response," which can be an
answer or a 12(b) motion. *See Salas as Tr. of Salas Child. Tr. v.*
*Commonwealth Land Title Ins. Co.*, 2022 WL 1630988 at *2 (N.D. Fla.
Apr. 5, 2022) (finding "no merit to [plaintiff's] argument that by filing a
motion to dismiss to the amended complaint, rather than an answer, [the
defendant was] in default.") The Court **DENIES** her motion to strike.

### III. Motion for Leave to Amend

Two months after Defendants filed their motion to dismiss, Plaintiff
moved for leave to file a second amended complaint. (Dkt. 40.)
Defendants opposed that motion. (Dkt. 42.) Over five months later,
while Defendants' motion to dismiss and Plaintiff's motion for leave to
amend were still pending, Plaintiff filed an "Amended Motion for Leave

to File a Second Amended Complaint." (Dkt. 51.)  Defendants opposed once more.  (Dkt. 52.)

Neither the Federal Rules of Civil Procedure nor the Local Rules of this Court explicitly provide litigants with a mechanism to "amend" a pending motion.  Nevertheless, because courts must liberally construe pro se filings, the Court will assume Plaintiff's "amended" motion for leave to file a second amended complaint was intended to be a new motion entirely.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  So, the Court denies the first motion as moot and addresses the second motion (Dkt. 51).

Rule 15 provides a one-time automatic right to amend a pleading within 21 days after service, or, if the pleading is one to which a responsive pleading is required, within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Thereafter, Rule 15 requires a plaintiff seeking to amend her complaint to obtain either the consent of the defendant or leave of court.  Fed. R. Civ. P. 15(a)(2).  A court should grant that leave "freely when justice so requires."  *Id.*  "Unless there is a substantial reason to deny leave to amend, the discretion of the district

court is not broad enough to permit denial." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999). Substantial reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

As her sole justification for amending her complaint this late, Plaintiff says an amendment is necessary to "clarif[y] and amplif[y] factual allegations to conform" to "newly discovered evidence." (Dkt. 51 at 4.) According to Plaintiff, her newly discovered evidence shows no doctor was ever involved in her care at Piedmont Fayette Hospital. (Dkt. 51 at 3–5.) Her proposed second amended complaint adds allegations about that and (without explanation) includes an entirely new subsection of factual allegations labeled "Disparate Treatment and Motive." (Dkt. 51 at 13, 15.) That subsection appears to be a direct response to Defendants' argument in its motion to dismiss that Plaintiff failed to properly allege disparate treatment—as required to make out an EMTALA screening claim.

12

There are "substantial reasons" to deny Plaintiff's request for leave to amend. *Foman*, 371 U.S. at 182. First, Plaintiff unduly delayed her motion to amend. The "newly discovered evidence" Plaintiff points to is, in fact, not new at all but information she has known about since the beginning. All of Plaintiff's supposedly "new" information comes from her medical records, which she has had access to and used throughout this litigation. (Dkt. 51 at 3.) In fact, Plaintiff admits she did not "discover" anything new, but rather "undert[ook] a more detailed review of her medical records," where she found information she simply missed during her first go-round. (*Id.*) Plaintiff's lack of diligence in reviewing her own medical records does not justify a seven-month delay in seeking leave to amend.

Second, permitting amendment would "undu[ly] prejudice" Defendants. *Foman*, 371 U.S. at 182. Plaintiff's proposed second amended complaint adds an EMTALA stabilization claim under 42 U.S.C. § 1395dd(b). (Dkt. 51 at 17.) The Court dismissed as frivolous that claim in Plaintiff's first amended complaint and denied reconsideration. (Dkts. 20, 38.) Plaintiff now seeks to relitigate that exact same claim, merely repackaging it in more precise language. But

the problem the first time around was not how she worded her claim—it was her lack of sufficient facts to assert an EMTALA stabilization claim. (Dkt. 20 at 9–11.)  The Court will not entertain Plaintiff's attempt to relitigate issues it has already decided.  Allowing Plaintiff another bite of the apple would prejudice Defendants.

Finally, amendment is futile.  This occurs "when the complaint as amended is still subject to dismissal." *Weaver,* 169 F.3d at 1320.  That is the case here.  As explained above, Plaintiff's first amended complaint fails to plausibly allege disparate treatment.  Her proposed second amended complaint does a little better as she references disparate treatment, but her allegations are wholly conclusory.  Plaintiff simply alleges that, "despite [her] presentation of clear symptoms of trauma and an emergency condition," the hospital failed to provide a screening "consistent with the standard procedures it provides to other patients with similar complaints." (Dkt. 51 at 13.)  Her reference to "symptoms of trauma and an emergency condition" is too vague to identify similarly situated patients in an emergency room.  It means nothing more than "she needed to be treated in an emergency situation" without identifying her symptoms so as to compare the treatment she received to the

14

treatment similarly situated paying patients received. On its face, she simply alleges she was treated differently than paying patients who needed to be seen at the emergency room. But patients go to the emergency room for any number of reasons, and not all of them require the same screening procedure. Somone with a broken arm or leg, for example, certainly receives a different screening than someone experiencing heart failure or a gunshot wound. So to say she was treated differently than others experiencing "trauma" or "an emergency medical condition" does not plausibly allege disparate treatment. *See Vickers*, 78 F.3d at 144; *Arnold*, 2022 WL 22865201 at *5; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). She also says "other patients with similar traumatic injuries" who had insurance coverage were treated differently. (Dkt. 51 at 19.) She fails to identify what those symptoms are, who the "similarly situated" patients were, and how exactly they were treated differently. So, again, this is not a plausible allegation of disparate treatment under EMTALA. Accordingly, the proposed second amended complaint would

be subject to dismissal for the same reasons the Court dismisses the first amended complaint.

## IV.    Conclusion

For the reasons above, the Court **DENIES** Plaintiff's Motions for Leave to File a Second Amended Complaint (Dkt. 40, 51), **DENIES** Plaintiff's Motion to Strike (Dkt. 33), and **GRANTS** Defendants' Motion to Dismiss (Dkt. 30).

**SO ORDERED** this 12th day of January, 2026.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE